UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RACKABLE SYSTEMS, INC.,

Plaintiff,

v.

SUPER MICRO COMPUTER, INC.,

Defendant.

_______________________________________/

No. C 05-3561 PJH

**ORDER GRANTING IN PART AND DENYING IN PART RACKABLE'S MOTION FOR SUMMARY ADJUDICATION; DENYING SUPERMICRO'S MOTION FOR SUMMARY JUDGMENT**

On April 11, 2007, Rackable Systems, Inc.'s ("Rackable") motion for summary adjudication and Supermicro Computer, Inc.'s ("Supermicro") motion for summary judgment came on for hearing before the court. Defendant Supermicro appeared through its counsel, Richard Yankwich, of DLA Piper US LLP, and plaintiff appeared through its counsel, Eric Lamison, of Kirkland & Ellis LLP. Having read the papers filed in conjunction with the motions and carefully considered the arguments and the relevant legal authority, and for the reasons stated on the record, the court GRANTS IN PART AND DENIES IN PART Rackable's motion for summary adjudication and DENIES Supermicro's motion for summary judgment.

## BACKGROUND

### A. Factual/Procedural Background

Rackable owns two patents concerning high density computer equipment storage systems. The patents are U.S. Patent No. 6,496,366 ("the '366 patent") and U.S. Patent

No. 6,850,408 ("the '408 patent"). The '408 patent is a continuation of the '366 patent, and the two patents share the same specification.

In October 1999, three co-inventors founded Rackable Systems LLC, the predecessor to Rackable. They founded Rackable to market the "back-to-back" and "front access" storage systems that they had previously devised. Rackable Systems LLC was subsequently acquired by the prior Rackable Systems, Inc. in January 2001. Rackable Systems, Inc. then assigned the patents to Rackable Corporation in December 2002. Rackable Corporation later changed its name to the present Rackable Systems, Inc. ("Rackable").

The patents' specification describes the incentive for the inventions. It discusses how the inventions intended to increase the efficiency at server locations by enabling front access to computers, for which access had previously generally been in the rear. This, in turn, enabled the placement of the computers back-to-back, thereby increasing the number of computers that could be racked and stored at a given facility. Rackable's '366 patent is focused primarily on the "back-to-back" rackmounting of computer servers, while the '408 patent is focused on "front access" design, enabling access to certain components from the front of the computer.

Rackable filed this case on September 2, 2005, against Supermicro for infringement as to both the '366 and '408 patents. Supermicro is a competitor of Rackable, and imports and sells servers and motherboards. Rackable contends that Supermicro recently began importing and selling computers that violate Rackable's patent rights.

On October 27, 2006, this court issued its order construing ten claims from the '366 and '408 patents. The court found several claims to be indefinite. It found two claims indefinite with respect to the '408 patent, including the claims "front," and "the I/O connectors including the one or more data transmission ports and to all components requiring intermittent access provided for the computer." It found one claim from the '366 patent to be indefinite -- "components requiring intermittent physical access."

The court subsequently permitted the parties to file motions regarding the implications of the indefiniteness rulings. The parties filed for hearing on January 17, 2007 six motions including: (1) Rackable's motion to dismiss for lack of case or controversy; (2) Supermicro's motion for summary adjudication of its counterclaims; (3) Supermicro's motion for attorneys fees and/or sanctions; (4) Supermicro's motion for summary adjudication and/or construction of '366 patent claim 39; (5) Rackable's motion for leave to file a motion for reconsideration of the court's *Markman* order; and (6) Supermicro's motion for leave to amend its preliminary invalidity contentions.

On January 18, 2007, the court entered a brief order following the hearing. Among other things, the court required the parties to submit a stipulation reflecting in part the court's rulings at the hearing. On February 5, 2007, the court signed the parties' stipulation and order, which:

1. Summarily adjudicated that all claims of the '408 patent and certain claims from the '366 patent were invalid due to indefiniteness;
2. provided that the summary adjudication would have no impact on the validity of the remaining claims of the '366 patent; and
3. denied Supermicro's motion for summary adjudication of non-infringement of those claims summarily adjudicated invalid and dismissed Supermicro's counterclaim for a declaratory judgment of non-infringement of those claims as moot without prejudice.

However, in its January 18, 2007 order, the court declined to stay the proceedings as to the remaining '366 claims not covered by the stipulation, and provided that those claims would proceed in accordance with the deadlines currently in effect at the time.

The instant motions concern the surviving '366 patent claims. Supermicro moves for summary judgment as to infringement on both Rackable's claim for infringement and on its counterclaim for non-infringement. Rackable moves for summary adjudication as to four issues – two pertain to prior art asserted by Supermicro, one concerns Supermicro's inequitable conduct defense, and the other, which concerns infringement, overlaps with

Supermicro's motion.[1] The court has therefore discussed the overlapping infringement issue raised by Rackable's motion with its discussion of Supermicro's motion for summary judgment.

**B. '366 Patent**

The '366 patent has forty-seven claims, nine of which are in independent form, including claims 1, 18, 23, 30, 40, 44, 46, and 47. Set forth below are the claims at issue in the instant motions.

Independent Claim 1 recites:

A set of **computers** comprising:

at least one **rack**; and

at least two **computers**, each **computer** having a **front** section and a back section located opposite each other in each of said **computers**, two of said **computers** being placed in a back-to-back configuration of said **rack**;

wherein said **computers** and said at least one **rack** cooperate to define a space between said **computers** and to direct air flowing into said space such that a quantity of air sufficient to constitute a cooling flow for said **computers** either (1) enters the space and exits out through the **computers** or (2) enters through the **computers** into the space and exits out of the space.

Claim 4 recites:

The set of claim 1, wherein the **front** section of at least one **computer** extends beyond an attachment area of said **rack.**

Claim 6 recites:

The set of claim 4 further comprising a bracket having an offset from the **front** section of the **computer** to extend to at least one **computer** beyond the attachment area of said **rack.**

Claim 8 recites:

The set of claim 1, wherein said **computers** are configured with at least one vent provided at the back section of a **computer** and at least one vent at the **front** section of the **computer**.

Claim 9 recites:

The set of claim 8, wherein at least one vent provided in the back section of a

---

[1]Supermicro generally objects to what it contends is Rackable's piecemeal MSA, arguing that the motion presents evidentiary issues more appropriately brought as motions in limine. It further argues that the motion is unhelpful because it does not terminate in its entirety any claim or counterclaim in the case.

**computer** is provided along a rear panel.

Claim 12 recites:

The set of claim 8, wherein at least some of said **computers** include at least one fan.

Claim 13 recites:

The set of claim 12, further comprising a thermal monitor adapted to increase or to decrease air flow within a **computer** to reduce the effects of thermal cycling on components.

Claim 17 recites:

The set of claim 1, wherein said space between said **computers** directs air flowing into said space from said **computers** out of said space.

Independent Claim 23 recites:

A method of cooling **computers** situated in an air environment that are back-to-back in at least one **rack** and having a channel for air between said back-to-back **computers** comprising:

drawing a quantity of air sufficient to cool the **computers** from said environment through each **computer** into said channel and out said at least one **rack**.

Claim 24 recites:

The method of claim 23, wherein the step of drawing the quantity of air sufficient to cool the **computers** from said environment through each **computer** and into said channel comprises providing fans in said **computers** adapted to draw air from said environment through said **computers**.

Claim 29 recites:

The method of claim 23 further comprising the step of providing said **computer** placed in the back-to-back relationship in at least one **rack** to define the channel for air between the **computers**.

Independent Claim 30 recites:

A method of cooling **computers** situated in an air environment that are back-to-back in at least one **rack** and having a channel for air between said back-to-back **computer** comprising:

> passing a quantity of air sufficient to cool the **computers** through each **computer** without recirculation of the air, wherein the quantity of air either (1) enters the space and flows out through the **computers** or (2) flows into the **computers** and exits out of the space.

Claim 32 recites:

The method of claim 30, wherein the step of passing the quantity of air sufficient to cool the **computers** through each **computer** without recirculation of air comprises

> drawing air from said environment through each **computer** into said channel and out of the **rack.**

> <u>Claim 37 recites:</u>

> The method of claim 30 further comprising the step of providing said **computers** placed in the back-to-back relationship in said at least one **rack** to define the channel for air between the **computers**.

Accordingly, the only disputed terms construed by the court in its October 2006 *Markman* order that are relevant to the claims at issue in these motions are "front," "rack," and "computer." The court construed "front" as "a panel designed to face forward when placed in a rack." It construed "rack" as "a frame or cabinet for holding multiple computer chassis," and "computer" as "a computer that functions as a server."

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The court will resolve all disputed issues of fact in favor of the non-moving party. *Id.* at 255.

### B. Parties' Motions

#### 1. Infringement

Supermicro moves for summary judgment of non-infringement on its counterclaim for declaratory relief for non-infringement and as to Rackable's claim for infringement as to '366 patent claims 1, 4, 6, 8-9, 12-13, 17, 23-24, 29-30, 32, and 37. In the related issue presented by Rackable's motion, Rackable seeks summary adjudication on one element of its inducement of infringement claim as to all of the '366 patent claims listed above *except* claims 30 and 32.

Contrary to Supermicro's opening papers, Rackable clarified in its opposition that it is claiming both direct infringement by Supermicro and also infringement by inducement, and that it is *not* pursuing a theory of contributory infringement.

##### A. Legal Standards

A determination as to patent infringement is a two-step process. *Warner-Lambert v.*

*Teva Pharmaceuticals*, 418 F.3d 1326, 1340 (Fed. Cir. 2005). First, the court must construe the claims. *Id.* Second, the court must compare the accused product or process to the properly construed claims. *Id.* The first step is a question of law and the second step is a question of fact. *Id.* Infringement may be found only where the accused product or process contains each limitation of the claim, either literally or under the doctrine of equivalents. *Id.*

i. Inducement of Infringement

Title 35 U.S.C. § 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." It covers the range of actions by which one may cause, urge, encourage, or aid another to infringe a patent. Active infringement by inducement requires direct infringement by someone other than the inducer. *See, e.g., Epcon Gas Syst., Inc. v. Bauer Compressors, Inc*., 279 F.3d 1022, 1033 (Fed. Cir. 2002). There can be no inducement of infringement absent direct infringement. *Id.*

The indirect infringement provisions, which include contributory and active inducement of infringement, differ from the direct infringement provision, because indirect infringement has been interpreted to require knowledge or intent on the part of an accused infringer. In *Golden Blount v. Peterson*, the Federal Circuit recently confirmed that "the only intent required of defendant is the *intent to cause the acts that constitute infringement.*" 438 F.3d 1354, 1364 (Fed. Cir. 2006) (citing with approval *Moba v. Diamond Automation*, 325 F.3d 1306, 1318 (Fed. Cir. 2003), and *Hewlett-Packard v. Bausch & Lomb*, 909 F.2d 1464, 1469 (Fed. Cir. 1990)) (emphasis added).

Circumstantial evidence is sufficient to establish both direct infringement and inducement of infringement. *Moleculon Research Corp. v. CBS*, 793 F.2d 1261, 1272 (Fed. Cir. 1986). As a general rule, "inducement of infringement under § 271(b) does not lie when the acts of inducement occurred before there existed a patent to be infringed." *Nat'l Presto Indus. v. W. Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996).

ii. Direct Infringement

Direct infringement occurs when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a). A patentee may prove direct infringement by either direct or circumstantial evidence. *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1219 (Fed. Cir. 2006) (citing *Moleculon*, 793 F.2d at 1272). There is no requirement that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable per se. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1374 (Fed. Cir.2005).

**B. Parties' Arguments**

**i. Inducement of Infringement**

Rackable claims that Supermicro is inducing direct infringement by its customers, including Intelenet, by selling them certain Supermicro products, and then inducing them to use the Supermicro product in a manner that infringes on Rackable's '366 patent claims.

a. Supermicro's Motion

Supermicro argues that Rackable has only identified one direct infringer - Intelenet. It contends that there is no evidence that Supermicro induced Intelenet to perform the infringing acts, that there is no evidence that Intelenet has seen the materials Rackable claims are inducing, and that no reasonable jury could find the materials inducing. Supermicro also contends that there is no evidence tying direct infringer Intelenet to Supermicro's allegedly inducing materials, which it asserts include four possible sources of inducement identified by Rackable - emails, user manuals, an SEC filing, and Supermicro's website. In support, it also argues that Rackable's infringement expert, Robert Stillerman, admitted that there was no connection between the alleged sources of inducement and Intelenet.

Supermicro turns first to the emails, of which it claims there are four at issue. It argues that three of the emails – which included one from Danny Le to the Supermicro

support group, one from Vincent Wong to Richard Chen and Supermicro's technical support group, and one from Richard Chen to John Hui – were internal messages only, and were not sent to third parties. Supermicro admits that the fourth email, from Simon Huang, was sent to Supermicro customers, but argues there is no evidence that it was sent to Intelenet or that Intelenet received it. Similarly, Supermicro argues that there is no evidence that Intelenet ever saw Supermicro's user manuals or guides, or that it read Supermicro's SEC statement. It contends that the same is true of Supermicro's website and the specific website pages that contain the allegedly inducing language.

Alternatively, Supermicro argues that even if Intelenet viewed the allegedly inducing materials, no reasonable jury could find that the materials induced infringement because more than mere advertising is required to induce infringement. It argues that the language utilized by its website, including "density-optimized," "double density," and "especially designed for space-limited applications" does not instruct customers how to assemble the products back-to-back, but is simply promotional. Regarding its user manual, Supermicro asserts that it similarly does not induce a back-to-back configuration. In terms of Intelenet's alleged direct infringement, Supermicro argues that Rackable has not produced evidence regarding the model numbers of the allegedly infringing servers located at Intelenet.

In opposition, Rackable counters that it can prove inducement of infringement with circumstantial evidence showing direct infringement and the related inducement. It also argues that Supermicro has misrepresented the law regarding what materials may evidence inducement of infringement.

Rackable argues that it is relying on "a broad range of communications" that include Supermicro's promotion of back-to-back use, in addition to its technical support group's specific instructions for customers regarding how to use Supermicro products in a back-to-back configuration. It contends that it has both direct and circumstantial evidence of Supermicro's inducement, including communications between Supermicro's Sales, Technical Support, and Engineering departments with its customers, and "unrebutted direct

evidence of direct infringement" by Supermicro customer, Intelenet. It further points to Supermicro's user manuals and its SEC filings.

Regarding Supermicro's Sales Department, Rackable points to an email from Supermicro employee Simon Huang, that it contends actively induced an infringing use of accused products by at least seven companies. *See* Casamiquela Decl. Exhs. 12, 22. That email was sent to more than 150 recipients at sixteen different companies, and advised Supermicro customers that Supermicro had "another new exciting new product[]," which allowed customers to "configure back-to-back servers." *Id.* at Exh. 12. Rackable notes that Supermicro's damages expert, Robert Wallace, admitted that the seven companies subsequently purchased the accused products following Huang's email. Casamiquela Decl. Exh. 23; *see also* Exh. 9 (email from Huang to other Supermicro executives, advising them that he received a very high customer response rate to his customer email).

Regarding Supermicro's technical support department, Rackable points to one of Supermicro's responses to "Frequently Asked Questions," as prepared by Danny Le, a member of the support department, and emailed to the department. *See* Casamiquela Decl., Exh. 19; Exh. 25. That response noted that Supermicro's accused products could be mounted "back-to-back," and explained how to mount them. *See* Casamiquela Decl., Exh. 19. Rackable argues that this response is circumstantial evidence that Supermicro's customers mounted the accused products back-to-back per its instructions.

Regarding Supermicro's engineering department, Rackable contends that Richard Chen, Supermicro's lead server chassis engineer and product manager for the accused products, also instructed Supermicro sales representatives that the accused Supermicro products could be configured for back-to-back use. *Id.* at Exh. 11, at 157. Additionally, Rackable points to an email exchange between Chen and Supermicro customer support, in which Chen provided a specific response to a customer inquiry advising the customer regarding "back-to-back" mounting. *Id.* at Exh. 28. Rackable further notes an email response from Supermicro engineer Vincent Wong, prepared in response to an inquiry sent

to Wong by Supermicro's technical support department seeking in turn a response to a customer inquiry, in which Wong set forth an explanation for the customer regarding how to accomplish back-to-back mounting. *Id.* at Exh. 29 (noting that Supermicro's product "does support back to back mounting" and explaining how to accomplish it using a "rack mount").

Turning to Supermicro's user manuals, Rackable contends that Supermicro essentially instructs customers regarding a back-to-back configuration, by explaining to customers how to mount the accused products directly into a rack without the use of rails. *See* Casamiquela Decl., Exhs. 26, 27. Rackable argues that by instructing customers how to install the accused product into a four-post rack without rails, Supermicro's manuals induce the user to directly mount the accused products in a back-to-back configuration. It also asserts that Supermicro's website lists mounting rails for the accused products as "optional" equipment. As for Supermicro's SEC filing, Rackable notes that it is not contending that the filing itself induced infringement.

Rackable then contends that in addition to showing inducement, the above evidence also "broadly shows" direct infringement resulting from Supermicro's inducement. It asserts that Intelenet is *not* the only direct infringer, but that it is only one specific example. With respect to alleged direct infringer Intelenet, Rackable notes that Intelenet purchased approximately 300 server units from Supermicro "built on [Supermicro's] accused 513 model chassis." It argues that this is sufficient circumstantial evidence that Supermicro induced Intelenet's direct infringement.

In reply, Supermicro repeats many of its same arguments in its opening papers. It first argues that even though Rackable has conceded that it is not bringing a claim for contributory infringement, the court should enter judgment for Supermicro on the claim because it is stated in Rackable's complaint. Supermicro also argues generally that Rackable has not submitted "significant probative evidence" sufficient to defeat its motion for summary judgment.

In terms of third party direct infringers, Supermicro asserts again that Intelenet is the only such infringer identified by Rackable. It argues that Rackable cannot rely on other

third parties listed in the exhibits to a Supermicro interrogatory response because those exhibits list *every Supermicro customer* who purchased the accused products, and that Rackable can't simply presume that these other customers are mounting servers back-to-back. In sum, Supermicro contends that for purposes of this motion, there is only one direct infringer – Intelenet.

Supermicro also clarifies that, contrary to Rackable's assertion otherwise, it has *not* conceded that Intelenet is an undisputed direct infringer. Instead, Supermicro contends that whether or not Intelenet is a direct infringer is irrelevant to the present motion because Rackable has not linked Intelenet to any of Supermicro's allegedly inducing activity. In support of its argument that there is insufficient evidence linking Intelenet with Supermicro's alleged inducement, Supermicro points to a chart that it has drafted, which it contends demonstrates the insufficiencies. *See* Reply at 9. In essence, Supermicro argues that Rackable cannot link Intelenet to Supermicro via the alleged emails because they were internal in nature.[2] It asserts that there is no evidence that the only non-internal marketing email, from Supermicro employee Huang to customers, was received by Intelenet. In terms of customer email inquiries *received* by Supermicro, Supermicro asserts that none of the emails cited by Rackable were from Intelenet.

Turning to its user manuals, Supermicro reiterates its original argument that the manuals do not mention "back-to-back" mounting; nor do they discuss mounting more than one column of units in a rack. It asserts that Rackable's argument that the manual's references to offset mounting and optional rail kits induced infringement fails because those elements appeared in prior art.

b. Rackable's Motion

In its motion, Rackable seeks summary adjudication on only one element of its

---

[2]At the April 11, 2007 hearing, in response to the court's inquiries on this issue, counsel for Supermicro erroneously suggested that at least one of the internal emails, that from Le to other members of the technical support group, responded *not* to a frequently asked *customer* question, but instead to frequently asked questions by Supermicro employees. Casamiquela Decl., Exh. 19. However, review of the record demonstrates that this is not the case. In his deposition, Le attested that the response was prepared to a frequently asked *customer* question. *See id.* at Exh. 25, at 45-46.

inducement of infringement claim, that of direct infringement by third party Intelenet. Rackable argues that is able to prove by a preponderance of the evidence that Intelenet's installation of the accused Supermicro products directly infringes on the subject '366 patent claims. In support, it relies on its expert Stillerman's opinion. Ostapuk Decl., Exh. T at 6-7, 8, Exhs. B-E. It further argues that Supermicro's expert Sam Wood conceded that he had no basis to dispute Stillerman's opinion. Ostapuk Decl, Exh. L at 73-75, 77-78. Accordingly, Rackable argues that Supermicro is unable to rebut Rackable's showing of direct infringement by Intelenet.

In opposition, Supermicro asserts that triable issues of fact exist regarding Intelenet's alleged direct infringement. First, it argues that Rackable should be precluded from pursuing a theory of infringement based on Intelenet's activities because it did not identify Intelenet in its Preliminary Infringement Contentions ("PIC"). Additionally, Supermicro argues that the court should resist making "an interlocutory factual finding of direct infringement" by Intelenet because it would not narrow the scope of any claims or counterclaims in this case.

As for the merits, Supermicro argues that Rackable's evidentiary basis for summary adjudication consists of Stillerman's expert report, Stillerman's subsequent visit to Intelenet, and testing conducted by Stillerman. It notes that Rackable failed to depose any Intelenet employees, and argues that it lacks a sufficient evidentiary basis for the finding it seeks. Specifically, Supermicro argues that Rackable has not provided any evidence that Intelenet's infringing units included "computers that functioned as a server," per this court's *Markman* ruling. Moreover, it argues that Stillerman's failure to determine which specific Supermicro products were installed at Intelenet precludes summary adjudication of the issue.

In reply, Rackable argues that it was not required list all evidentiary support in its PIC under Patent L.R. 3-1, and that the Intelenet evidence was properly developed in discovery. It asserts that its current argument regarding Intelenet is not a change in its theory on the inducement of infringement claim. Rackable notes that contrary to

Supermicro's argument, its expert Stillerman did indeed identify the accused Supermicro products and model numbers used in an infringing manner by Intelenet. Ostapuk Decl., Exh. T, at pars. 3, 7, 11, 23, 29-30; Exh. B. It argues that the photographs relied on by Stillerman plainly show Supermicro logos on servers used by Intelenet. Ostapuk Reply Decl., Exh. J & K.

**ii. Direct Infringement**

In its opening papers, Supermicro simply asserts that Rackable has dropped its case for direct infringement. However, as noted above, that is not the case.

In opposition, Rackable argues that Supermicro's use of computers mounted back-to-back in its testing facility for the accused product demonstrates direct infringement, and cites to a photograph that evidences such mounting, *see* Yankich Reply Decl., Exh. 2; deposition testimony from Henry Kung, a Supermicro employee who testified that the photograph showed the rackmounting of Supermicro's server; and Supermicro emails that suggest that the mounted servers shown in the photograph were under testing. *See* Casamiquela Decl., Exh. 11 at 90:6-91:4 (Chen testimony); Exh. 8 at 196:16-19 (Kung testimony); Exh. 47 (Supermicro emails). Rackable further argues that there is strong circumstantial evidence that Supermicro's engineers in fact mounted the accused products in a back-to-back configuration and that they told technical support staff and customers that they could be mounted that way.

In reply, Supermicro first argues that Rackable cannot utilize the test report to show direct infringement because it did not rely on it in its PIC, and cites to Federal Rule of Civil Procedure 37(c). Supermicro nevertheless argues that the photograph relied on by Rackable does *not* indicate back-to-back mounting, and therefore cannot create a triable issue of material fact. Supermicro further counters that Rackable's reliance on the circumstantial evidence of direct infringement is too speculative to proceed to trial.

**C. Analysis**

**i. Inducement of Infringement Claim**

As noted above, in order to prove that a defendant induced infringement under 35 U.S.C. § 271(b), a plaintiff must show that the defendant took actions that actually induced direct infringement by another, and that the defendant knew or should have known that such actions would induce infringement. *See Golden Blount,* 365 F.3d at 1061. Additionally, a defendant's liability for indirect infringement must relate to the identified instances of direct infringement. *See Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1274-75 (Fed. Cir. 2004).

a. Existence of Third Party Direct Infringer

The Federal Circuit has held that with inducement of infringement claims, a patent holder may either identify individual acts of direct infringement, or an entire category of infringers (e.g., a defendant's customers). *Dynacore*, 363 F.3d at 1274-75. "Plaintiffs who identify individual acts of direct infringement must restrict their theories of vicarious liability and tie their claims for damages or injunctive relief to *the identified act.*" *Id.* On the other hand, "[p]laintiffs who identify an entire category of infringers (e.g., the defendant's customers) may cast their theories of vicarious liability more broadly, and may consequently seek damages or injunctions across the entire category." *Id.*

Where a plaintiff identifies a category of infringers, such as customers, the courts generally do not require that the customers be specifically identified. *See Metabolite Laboratories v. Laboratory Corp. of America*, 370 F.3d 1354, 1364-65 (Fed. Cir. 2004) (affirming district court's denial of judgment as a matter of law ("JMOL") of no infringement, and concluding that there was sufficient evidence of direct infringement by third party doctors and that plaintiff patentee was not required to show which specific doctors directly infringed method patent claims); *but see E-Pass Technologies, Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222-23 (Fed Cir. 2007) (implying that in order to successfully make out an inducement of infringement claim based on direct infringement by a defendant's customers, the plaintiff should be able to point to at least one end user that infringed).

Here, Rackable has identified both a specific infringer, Intelenet, and a category of infringers, Supermicro's customers, which includes Intelenet. It is not entirely clear to the court whether in naming Intelenet, Rackable intended to assert an individual act of infringement, or simply, in accordance with the Federal Circuit's recent decision in *E-Pass,* intended to provide one example of a direct infringer from its customer category. Rackable's theory as to Intelenet affects the type of proof required, as discussed below. *See Dynacore*, 363 F.3d at 1274.

However, regardless of the theory Rackable intends to advance with respect to Intelenet, Rackable has sufficiently identified its third party direct infringers as required by Federal Circuit law.

b. Evidence of Supermicro's Inducement and Intent to Induce Infringement

Numerous cases find active inducement where a defendant selling products capable of either innocent or infringing use, as Supermicro is accused of doing, provides through labels, advertising or other sales methods, instructions and directions as to the infringing use. *See* 5 Chisum on Patents § 17.04[4][f]; *Biotec v. Biocorp*, 249 F.3d 1341 (Fed. Cir. 2001); *Mentor HS v. Medical Device Alliance, Inc.* 244 F.3d 1365 (Fed. Cir. 2001). In *Chiuminatta Concrete Concepts v. Cardinal Industry*, the Federal Circuit held that the district court correctly granted summary judgment based on its finding that, by advertising and selling a rotary saw for cutting concrete, an accused infringer actively induced infringement of a patent claim that required cutting concrete at a specified stage of hardening. 145 F.3d 1303, 1307 (Fed. Cir. 1998). The advertisements in that case suggested cutting the concrete with the accused saw at a stage earlier than the stage required by the claim, but then also encouraged use at later stages that fell within the claim. *Id.*

In terms of inducement, the court finds that there is a genuine issue of material fact whether Supermicro induced its customers to utilize its products in a back-to-back configuration that may infringe on the '366 patent claims. Although Supermicro has argued that the emails were internal, thus suggesting that its customers never received the

inducing instructions, there is sufficient circumstantial evidence that Supermicro customers did in fact receive the inducing materials and instructions. First, Huang's email was undisputedly sent to Supermicro customers, and there is direct evidence that some customers received it and responded to it. Second, Le's deposition testimony established that the response he prepared to "Frequently Asked Questions" was in response to customer inquiries and was prepared with the intention that it be distributed to customers. Third, lead engineers Chen and Wong both responded to direct customer inquiries via their internal emails to the technical support department. Finally, Supermicro's own expert admitted that seven customers listed in Huang's email purchased the accused Supermicro product. Moreover, it is worth noting that Supermicro does not dispute the substance or the authenticity of the emails, which contained instructions that are sufficient to raise a triable issue of fact as to inducement.

As noted above, the Federal Circuit recently confirmed that "the only intent required of defendant is the *intent to cause the acts that constitute infringement.*" *Golden Blount*, 438 F.3d at 1364. The requisite intent to induce may be inferred from all of the circumstances, such as giving a direct infringer instructions on how to use a patented process or designing a product to infringe. *Apple Computer v. Articulate Systems, Inc.*, 991 F.Supp. 1189, 1191 (N.D. Cal. 1997); *see also Sharper Image v. Target*, 425 F.Supp.2d 1056, 1066 (N.D. Cal. 2005) (defendants' sales of accused product in combination with instruction manuals constituted some evidence of knowing intent to induce infringement sufficient to defeat defendant's motion for summary judgment). There is no dispute that Supermicro intended to issue the instructions and emails that underlie this claim.

c. required link between the inducement and the direct infringement

i. Customer Category

The court looks first at the customer category, which includes Intelenet, asserted by Rackable in support of its inducement of infringement claim. Supermicro suggests that Rackable has failed to offer evidence of direct infringement by Supermicro customers other than Intelenet. However, Rackable was not required to do so. Direct infringement by a

customer group may be inferred where the instructional materials teach an infringing configuration. *See Golden Blount*, 438 F.3d at 1363 (holding that where court was able to conclude that the instruction sheet taught an infringing method regarding fireplace burner assembly, that was sufficient circumstantial evidence to prove direct infringement by the third party customer end-users); *see also Sharper Image*, 425 F.Supp.2d at 1065-66 (holding that where evidence of an owner's guide produced by the defendant instructed users how to clean an air purifier in a manner that infringed upon the plaintiff's patent, there was sufficient circumstantial evidence of both inducement and of the fact that "at least some customers did follow the instructions").

Even if this court was not inclined to make the inferential leap based on the inducing materials themselves, there is nevertheless additional evidence creating a triable issue of fact that Supermicro's customers did in fact infringe on the '366 patent. First, Rackable has pointed to circumstantial evidence in the form of deposition testimony from a member of Supermicro's sales department that suggests that its customers did in fact follow Supermicro's instructions regarding back-to-back rackmounting. *See* Casamiquela Decl., Exh. 25 at 77-78. Second, there is photographic evidence, in addition to expert testimony, that Intelenet, a Supermicro customer, installed Supermicro products in a manner that infringed on the '366 patent. *See* Ostapuk Decl., Exh. T.

ii. Intelenet

As discussed above, although its theory is not entirely clear, it also appears that Rackable intends to base its inducement of infringement claim on an identifiable individual act of direct infringement by Intelenet. That this is an alternative or additional theory for Rackable's claim is further supported by the fact that Rackable has actually moved for summary adjudication as to Intelenet's direct infringement. In support of that motion, Rackable offered an unrebutted expert opinion supported by photos and related reports that Intelenet directly infringed on its patent. *See* Ostapuk Decl. at Exhs. L, T, and U.

As noted above, where a plaintiff, such as Rackable, "identif[ies] individual acts of direct infringement, [it] must restrict [its] theories of vicarious liability and tie [its] claims for damages or injunctive relief to *the identified act.*" *Dynacore*, 363 F.3d at 1274-75.

For purposes of Supermicro's motion, the question is whether there is a triable issue of fact as to the link between Supermicro's inducement and Intelenet's alleged act of infringement (as demonstrated by the photograph at Ostapuk Decl., Exh. T). Although Rackable has not pointed to direct evidence demonstrating that Intelenet actually received the inducing materials themselves, given the fact that Intelenet was undisputedly a Supermicro customer, and the evidence of Supermicro's inducement of its customers generally, it can be inferred for purposes of Supermicro's motion that Intelenet received inducing materials similar to those received by other Supermicro customers. Additionally, there is further circumstantial evidence that Intelenet received Supermicro's inducing materials, and followed the instructions contained therein, given the photograph taken at Intelenet's facility demonstrating Supermicro computers stacked in a back-to-back configuration. For these reasons, the court concludes that there is a triable issue of fact regarding the link between Supermicro's inducing activities and Intelenet's alleged direct infringement.

However, turning to Rackable's motion, the inquiry is different since Rackable actually seeks summary adjudication that Intelenet directly infringed upon its patent for purposes of this claim. The court declines to parse out the claim to the extent sought by Rackable. Having concluded that a triable issue of fact exists on the link with Intelenet, and that the inducement of infringement claim will go to trial, and given the repercussions of such a finding on a third party, the court makes no finding on this additional single element of the claim.

For all of the above reasons, the court DENIES Supermicro's motion for summary judgment as to the inducement of infringement claim, both as it pertains to Supermicro customers and specifically to Intelenet, and also DENIES Rackable's related motion for summary adjudication as to one element of the claim.

**ii. Direct Infringement Claim**

The briefing on this issue was scant, at best. However, the court concludes that based on the evidence before it, a triable issue of fact exists as to Supermicro's direct infringement. Additionally, the court denies Supermicro's Rule 37 objection to Rackable's arguments and evidence since the issue was raised in its reply brief, and no formal motion was or has been filed.

The court further notes that experimentation and testing may be exceptions to infringement of a patent as long as they are de minimus and NOT for a commercial purpose. *See Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000) (defendants' tests on infringing machines constituted infringement where the defendants "performed the tests expressly for commercial purposes"). Here, Supermicro has not disputed that the testing depicted in the photograph submitted by Rackable was *not* for a commercial purpose. Accordingly, it does not appear to qualify as an exception to infringement.

For these reasons, Supermicro's motion for summary judgment as to the direct infringement claim is DENIED.

**iii. Contributory Infringement**

Because Rackable has conceded that it is not bringing a claim for contributory infringement, and for the reasons stated on the record, this claim is DISMISSED.

**2. Enforceability**

Rackable moves for summary adjudication as to Supermicro's unenforceability counterclaim, to the extent that it is based on Rackable's alleged inequitable conduct. Supermicro clarified in its opposition that its counterclaim is based on two instances of inequitable conduct, rather than four as anticipated by Rackable, which include: (1) Rackable's failure to identify print and copyright dates for Cobalt Raq 2, 3, and 4 datasheets in the Information Disclosure Statement ("IDS") submitted by Rackable to the

United States Patent & Trademark Office ("USPTO"); and (2) Rackable's failure to disclose the Cobalt Raq 1 datasheet to the USPTO.[3]

### A. Legal Standards

A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the USPTO during prosecution. *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). The party asserting inequitable conduct must prove a threshold level of materiality and intent by clear and convincing evidence. *Id.*

To prove that a patent is unenforceable due to inequitable conduct, the alleged infringer must provide clear and convincing evidence of (1) affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, and (2) an intent to deceive. *Impax Laboratories, Inc. v. Aventis Pharmaceuticals, Inc.*, 468 F.3d 1366 (Fed. Cir. 2006).

Information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and: (1) it established by itself or in combination with other information, a prima facie case of unpatentability; or (2) it refutes, or is inconsistent with, a position the applicant takes either in opposing an argument of unpatentability relied on by the office, or in asserting an argument of unpatentability. *Id.* Additionally, the Federal Circuit recently affirmed that what had previously been referred to as the "reasonable examiner" standard for materiality, may also be utilized by a court in determining materiality. *Id.* at 1374. Under that standard, an omission or misstatement is material "if a reasonable examiner would have considered such [information] important in deciding whether to allow the patent application." *Id.*

---

[3]Supermicro noted that it is no longer pursuing a claim of inequitable conduct based on Rackable's failure to submit the Koike patent to the USPTO, or its failure to disclose to the USPTO commercially available computer racks with removable sidewalls. Therefore, the court limits its discussion to the two items listed above.

To satisfy the intent to deceive element of inequitable conduct, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Id.* (quoting *Kingsdown Med. Consultants, Ltd. v. Hollister*, 863 F.2d 867, 876 (Fed. Cir. 1988)). "Intent need not, and rarely can be proven by direct evidence." *Id.* Rather, intent to deceive is generally inferred from the facts and circumstances surrounding the applicant's overall conduct. *Id.* Furthermore, under the "reasonable examiner" standard, a misstatement or omission may be material even if disclosure of that misstatement or omission would not have rendered the invention unpatentable. *Digital Control*, 437 F.3d at 1318.

If the court finds materiality and intent, it "must balance the equities to determine whether the patentee has committed inequitable conduct that warrants holding the patent unenforceable." *Id.* (quoting *Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1239 (Fed. Cir. 2004)). The more material the omission or misrepresentation, the less intent that must be shown to elicit a finding of inequitable conduct. *Id.* If inequitable conduct occurred with respect to one or more claims of an application, the entire patent is unenforceable. *Id.*

Determining at summary judgment that a patent is unenforceable for inequitable conduct is permissible, but uncommon. *Digital Control*, 437 F.3d at 1313. "A genuine issue of material fact is not raised by the submission of 'merely conclusory statements or completely unsupportable, specious, or conflicting explanations or excuses.'" *Id.* (quoting *Monsanto*, 363 F.3d at 1240). The Federal Circuit has upheld a district court's grant of summary judgment on inequitable conduct where "the affidavits submitted to explain the representations made to the USPTO were bare declarations of lack of intent to mislead and the explanations provided in the affidavits were either nonresponsive or lacked evidentiary support." *Id.* (citations omitted). However, the court has refused summary judgment where the plaintiff submitted an affidavit that "set forth a non-frivolous explanation that could lead a finder of fact to determine that this declaration to the USPTO was not false or misleading or where the plaintiff stated facts supporting a plausible justification or excuse for the misrepresentation." *Id.*

**B. Parties' Arguments**

**i. Rackable's Information Disclosure Statement**

Frank Becking served as Rackable's patent prosecution counsel at the time of Rackable's patent application. He hired a prior art firm to search for potentially relevant art, and disclosed in Rackable's December 4, 2000 IDS filed with the USPTO, the art located by the search firm and that located through internet and newspaper reviews. *See* Ostapuk Decl., Exh. K. Items 18, 19, and 20 of the IDS listed the Cobalt Raq 2, 3, and 4 datasheets. *See id.* Becking also identified the website links where the datasheets could be found, and noted on the IDS that the links were "visited on November 27, 2000." *See id.* He also submitted the actual data sheets to the USPTO. *See id.* at 7-12. The datasheets themselves specified copyright and print dates, including a 1999 copyright and print date for the Cobalt Raq 2 datasheet, and 2000 copyright and print dates for the Cobalt Raq 3 and Raq 4 datasheets. *See id.* at 8 (Cobalt Raq 2), 9 (Cobalt Raq 3), 12 (Cobalt Raq 4).

Supermicro argues that Becking should have disclosed specifically in the IDS the copyright and print dates on the datasheets, which ranged from one to two years prior to the date of Becking's visit to the website, and cites to 37 C.F.R. § 1.56 regarding a patentee's duty to disclose information material to patentability. Supermicro contends that the copyright and print dates for the Cobalt Raq 2 data sheet were highly material given the fact that the datasheet disclosed installing Cobalt Raq 2 servers on both sides of a rack - the novel feature claimed in Rackable's '366 patent. It argues that disclosure of the dates was also required by 37 C.F.R. § 1.98 because the dates established that the invention was known prior to the filing of the '366 patent application.

Moreover, Supermicro contends that if Rackable had properly disclosed the date in its IDS, then the patent examiner could have researched the Cobalt company. It contends that although the USPTO had the datasheets themselves, the font size of the copyright and print dates was too small to put the examiner on notice of those dates. Supermicro further asserts that there is sufficient evidence of Becking's intent to deceive the USPTO since Becking admitted that he knowingly chose to omit the copyright and print dates, *see*

Corbett Decl., Exh. A at 109:5-8, and argues that Becking's "huddling with other attorneys at his office" further demonstrates such intent.

Rackable, on the other hand, argues that Becking's use of the November 27, 2000 website visit as the "publication" date on the IDS was appropriate pursuant to patent law, which requires disclosure of the "publication" rather than the "print" date. It asserts that the 1999 print date on the Cobalt datasheets was not necessarily a "publication" date because there was nothing to demonstrate that the documents were actually publicly disseminated as of those dates. Rackable further notes that the examiner had the datasheets themselves, and that the examiner's initials on the datasheets demonstrates that s/he considered them and the print dates therein. Ostapuk Decl., Exh. K.

Rackable also argues that there was no intent to deceive on Becking's part because he listed the datasheets and their dates in good faith after consultation with other attorneys.

**ii. Cobalt Raq 1 Datasheet**

Supermicro also argues that because Becking, Rackable's prosecution counsel, knew about the Cobalt Raq 2, 3, and 4 datasheets, he should have known and disclosed another datasheet – the Cobalt Raq 1 datasheet. Ostapuk Decl, Exh. Q; *see also* Exhs. 1, Seelig and Mehra Decls. Supermicro's counsel discovered the Cobalt Raq 1 datasheet on a third party website in 2006. Supermicro's argument is that since Becking knew about the existence of Cobalt datasheets with revision numbers 2, 3, and 4, he should have known that a product corresponding to revision 1 existed.

In its opening brief, Rackable notes that Supermicro's expert, Wood, admitted in his deposition that there was no evidence that Becking or others knew of the Cobalt Raq 1 datasheet. Ostapuk Decl, Exh. L at 245-54; Exh. N. In fact, Rackable notes that Wood admitted that the internet archive for Cobalt's website suggested that website page did not contain the subject datasheet as of Becking's November 27, 2000 visit to the website. *See id.* It further argues that there is no evidence that any inventor knew of the datasheet. Ostapuk Decl., Exh. H at 74-5, 91-2; Exh G at 126-28; Exh. C at 159-60. Rackable also

contends that patent law requires that an applicant or its counsel *actually* know of the withheld prior art before there is an obligation to disclose it.

In opposition, Supermicro's again argues that there is a genuine issue of material fact as to whether Becking knew or should have known about the datasheet.

In reply, Rackable reiterates that as a matter of law, Supermicro's "should have known" standard is wrong, and that Supermicro also has not shown any intent to deceive on Becking's part.

**C. Analysis**

The parties seem to disagree regarding the applicable legal standards to apply to Supermicro's inequitable conduct defense, which forms the basis of its unenforceability counterclaim, but neither explains coherently what the issue is or the significance of their alleged disagreement. In its opposition, Supermicro argues that Rackable improperly deviates to a "fraud" standard, and that although inequitable conduct is sometimes referred to as "fraud on the patent office," fraud and inequitable conduct are not synonymous. It is not clear whether Supermicro is arguing that the case law regarding inequitable conduct that Rackable relies on is the wrong case law, or that Rackable misrepresents the case law. In any event, the court has undertaken its own review of the case law, and has set forth the general legal standards regarding inequitable conduct above, and will apply Federal Circuit law regarding inequitable conduct to the pertinent issues raised by Rackable's motion. Again, as with the infringement claim, although the parties have not done so, the court analyzes the issues based on the required elements for inequitable conduct, as set forth by the Federal Circuit.

**i. Omission/Misrepresentation**

Supermicro has pointed to two omissions and/or misrepresentations by Rackable in support of its counterclaim. The first - regarding the Cobalt Raq 2, 3, and 4 datasheets' print and copyright dates - appears to be both an alleged omission and a misrepresentation. It is an omission in the sense that Supermicro contends that Becking should have provided the copyright dates; and it is a misstatement to the extent that

Supermicro contends that Becking provided the wrong date(s). The second, which concerns Becking's failure to disclose the Cobalt Raq 1 datasheet, constitutes an omission as opposed to a misrepresentation since there is no dispute that the datasheet was not disclosed.

The Federal Circuit has held that affirmative misrepresentations, in contrast to misleading omissions, are more likely to be regarded as material. *Digital Control*, 437 F.3d at 1318. Additionally, the court has held with that where a defendant alleges a material omission, "there must be clear and convincing evidence that the applicant *made the deliberate decision to withhold a known material reference.*" *Id.* (quoting *Baxter Int'l Inc. v. McGaw*, 149 F.3d 1321, 1327 (Fed. Cir. 1998)).

Here, Supermicro has pointed to evidence that Becking was aware of the first omission regarding the Cobalt Raq 2, 3, and 4 datasheets' copyright dates, but that Becking nevertheless chose not to include the information on Rackable's IDS. However, regarding the undisclosed Cobalt Raq 1 datasheet, Supermicro has not pointed to any evidence that Becking and/or Rackable were aware of the datasheet, let alone that he made a deliberate decision to withhold it, as required by the law, for its inequitable conduct defense.

Because the Federal Circuit requires a "deliberate decision" in connection with an alleged omission and there is no evidence that Becking made such a decision to omit information regarding the Cobalt Raq 1 datasheet, the court GRANTS Rackable's motion regarding Supermicro's unenforceability counterclaim as it pertains to the Cobalt Raq 1 datasheet.

However, it is necessary for the court to proceed further with its inquiry regarding Becking's alleged omission and/or misstatement of the appropriate dates for the Cobalt Raq 2, 3, and 4 datasheets.

**ii. Materiality**

Turning to the issue of materiality, Supermicro points to 37 C.F.R. section 1.56 (regarding duty of candor generally) and also to section 1.98(b)(5) in support of its

argument that the copyright and print dates on the Cobalt Raq 2, 3, and 4 datasheets were material and should have been disclosed. Section 1.98(b) requires that "[e]ach publication listed in an [IDS] must be identified by publisher, author (if any), title, relevant pages of the publication, *date*, and place *of the publication*." (emphasis added.)

As noted above, the parties disagree regarding whether the copyright and print dates constituted "publication" dates for purposes of the applicable regulations. However, it is not necessary for the court to resolve that issue because summary adjudication is appropriate on other grounds.

Information that is withheld from the USPTO "is not material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner." *Digital Control*, 437 F.3d at 1319. There is no dispute that the copyright and print dates were in fact disclosed on the Cobalt Raq 2, 3, and 4 datasheets themselves, which were provided to the USPTO with the IDS. The fact that the dates were in a small font on the documents does not render the information "withheld" or "undisclosed." While the court certainly appreciates the difficulty associated with small print, it was readily able to discern the copyright information from the photocopied exhibits submitted to it, and is not persuaded that the size of the print prevented notice to the USPTO of the date information.

Accordingly, because Rackable submitted the datasheets, which themselves contained the dates at issue, any additional disclosure of the dates on the IDS would have been cumulative, and thus cannot be considered material. *See Digital Control*, 437 F.3d at 1319. The court therefore also GRANTS Rackable's motion with respect to Supermicro's unenforceability counterclaim in so far as it concerns the copyright and print dates for the Cobalt Raq 2, 3, and 4 datasheets.

**3. Invalidity**

Rackable also moves for summary adjudication as to Supermicro's invalidity counterclaim, in so far as Supermicro contends that the '366 patent is invalid because the Cobalt Raq 1 datasheet, discussed above, and the Cobalt Raq device constitute prior art.

The parties have not done a particularly good job of explaining either the device or the datasheet in their papers. The Cobalt Raq 1 datasheet, which was located by Supermicro's counsel in a 2006 search on the Internet, in turn, describes the Cobalt device (also referred to by the parties as the Cobalt "product" or "Raq"). The datasheet describes the Cobalt Raq device as follows:

> Cobalt RaQ microservers, from Cobalt Networks, Inc., deliver a full suite of Internet services with remote administration capabilities - packaged in a single rack unit height, industry standard enclosure.

*See* Ostapuk Decl., Exh. Q; Seelig and Mehra Decls., Exh. 1. It contains a print date of "7/98" and a copyright date of 1998. *Id.* Former Cobalt employees, including the Raq inventor, describe the Raq as "a server." *See* Ostapuk Decl., Exh. M at 13.

**A. Legal Standards**

A patent is entitled to a presumption of validity, and an accused infringer must prove invalidity by clear and convincing evidence. *Metabolite Labs., Inc. v. Lab. Corp.*, 370 F.3d 1354, 1365 (Fed. Cir. 2004). The relevant statute, 35 U.S.C. § 102, provides in pertinent part:

> A person shall be entitled to a patent unless –
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

Section 102(a) establishes that a person cannot patent what was already known to others. *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1370 (Fed. Cir. 1998). If the invention was known to or used by others in this country before the date of the patentee's invention, the later inventor has not contributed to the store of knowledge, and is not entitled to a patent. *Id.* Thus, under section 102(a), prior knowledge or use by others may invalidate a patent if the prior knowledge or use was accessible to the public.

In comparison, section 102(b) establishes a one-year grace period based on publication or public use or sale, after which an inventor is barred from access to the patent

system. *Id.* Unlike section 102(a), section 102(b) "is primarily concerned with the policy that encourages an inventor to enter the patent system promptly, while recognizing a one year period of public knowledge or use or commercial exploitation before the patent must be filed." *Id.* "Thus an inventor's own prior commercial use, albeit kept secret, may constitute a public use or sale under section 102(b), barring him from obtaining a patent." *Id.* However, when an asserted prior use is not that of the patent applicant, section 102(b) is not a bar when that prior use or knowledge is not available to the public. *Id.* at 1371.

To invalidate patent claims based on prior art, the challenger to the patent must show by clear and convincing evidence that the earlier invention is prior art under section 102, and that the earlier invention includes all elements of the claims at issue. *Metabolite Labs.*, 370 F.3d at 1365, 1367; *Netscape Comm. Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002).

To anticipate under either section 102(a) or section 102(b), a single prior art reference must disclose every limitation of the claimed invention. *See Schering Corp*. *v. Geneva Pharmaceuticals*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (citing *Lewmar Mar., Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987)). Furthermore, such disclosure must be "enabling" – i.e., it must be sufficient to permit a person having ordinary skill in the art to practice the invention. *SmithKline Beecham Corp. v. Apotex Corp*., 403 F.3d 1331, 1342 (Fed. Cir. 2005) (quoting *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002)).

Anticipation is a question of fact, *SmithKline,* 403 F.3d at 1343, and the determination of whether a prior art reference is enabling "is a question of law based upon underlying factual findings." *Crown Operations Int'l v. Solutia,* 289 F.3d 1367, 1376 (Fed. Cir. 2002). "However, without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." *SmithKline*, 403 F.3d at 1343. The burden of proof in all instances falls upon the party seeking to establish the invalidity of a patent claim, who "must overcome the presumption of validity in 35 U.S.C. § 282 by clear

and convincing evidence." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003).

For prior art to anticipate a patent under section 102(a), the knowledge must be publicly known and sufficient to enable one of ordinary skill in the art to practice the invention. *Minnesota Mining*, 303 F.3d at 1301. Public use under section 102(b) includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor. *Id.* at 1301.

**B. Parties' Arguments**

**i. Cobalt Raq 1 Datasheet**

At the outset, it is important to note that Supermicro clarified that its position is that the datasheet is prior art under 35 U.S.C. §§ 102(a) and 102(b) – but *not* § 102(g), and that the datasheet anticipates the asserted '366 patent claims. Thus, the court need not address Rackable's arguments in its opening motion papers regarding § 102(g).

In its opening papers, Rackable argues that the datasheet cannot constitute prior art under § 102(a) because Supermicro cannot prove that it was publicly disseminated, and because, even if it was publicly disseminated, there is no evidence that it was disseminated prior to Rackable's patent. Rackable cites to a district court decision for the proposition that "a self-affixed copyright or print date does not show when the document was publicly disseminated and accessible to one of skill in the art." *Hilgraeve v. Symantec*, 271 F.Supp.2d 964, 975 (E.D. Mich. 2003). In support of its argument regarding public dissemination, Rackable also cites to deposition testimony from Glenn Henriquez, a former engineer for Cobalt, and also the Cobalt Raq inventor, who testified that he did not know exactly when or whether the datasheet was publicly disseminated, and to deposition testimony from Supermicro's expert, Wood. Ostapuk Decl., Ex. M at 23; Exh. L at 239-45.

As for § 102(b), Rackable notes that since the publication of the datasheet was by a third party, Cobalt, the publication, use, or sale, must be available to the public. *See Woodland Trust*, 148 F.3d at 1371. For the same reasons that it argued that Supermicro

cannot establish public dissemination under § 102(a), Rackable also argues that Supermicro cannot establish public dissemination under § 102(b).

Rackable also argues that in addition to not qualifying as prior art, Supermicro cannot assert the datasheet as anticipating, because the datasheet lacks many elements of the '366 patent's independent claims. Rackable contends that contrary to the independent claims of the '366 patent, the datasheet makes no reference to back-to-back use of the Raq devices or the required airflow. Ostapuk Decl., Exh. Q; Exh. L at 256-59, 262-63. In support, Rackable asserts that Henriquez, the Cobalt Raq designer, testified that he had never heard of nor seen the Raq used in a back-to-back fashion, and that he did not understand the datasheet's references regarding placement. Ostapuk Decl., Exh. M at 36-37.

In opposition, Supermicro counters that the Cobalt Raq 1 datasheet was made available to the public in July 1998 in accordance with its copyright date - and prior to the priority date of Rackable's patent, and therefore constitutes prior art. In support, Supermicro cites to declarations from Cobalt's Director of Marketing, Kelly Seelig, and its co-founder, Vivek Mehra. It also cites to Henriquez's deposition testimony regarding the fact that the datasheet was distributed to "people that wanted to buy a product." Corbett Decl, Exh. C at 20-22. Supermicro also asserts that for these very same reasons, the datasheet qualifies as prior art under § 102(b).

Supermicro further argues that the datasheet indeed anticipates the asserted claims, and that contrary to Rackable's arguments, the datasheet necessarily teaches back-to-back configuration. In support, it notes the relevant disclosure in the datasheet:

> **High server density**
> The Cobalt Raq microserver is designed for use in the extremely space-conscious environment of the ISP Network Operations Center. Its single rack-unit enables up to 40 Cobalt Raq microservers to fit into a standard 19-inch equipment rack, or up to 80 when mounted on both sides of a rack. Low power consumption translates to low heat generation, and a rear-mounted fan provides front-to-back flow-through cooling.

Corbett Decl., Exh. C at Tab 903 (same as Ostapuk Decl, Exh. Q; Seelig and Mehra Decls., Exh. 1). Supermicro's expert attests in a declaration filed in conjunction with Supermicro's

opposition that the above language of the datasheet indeed discloses a back-to-back configuration of the Raq servers. Wood Decl., par. 12.

Supermicro also argues that according to this court's construction of "front" following the *Markman* hearing as "a panel designed to face forward when placed in a rack," and the parties' stipulation that "back" means the opposite of front, Rackable's argument that the datasheet may teach front-to-back or front-to-front placement - as opposed to back-to-back placement - does not square with the court's *Markman* ruling. It further notes that the term "front" was only definite with respect to the '366 patent (as opposed to the '408 patent) because the rack provides a frame of reference by which to determine the "front" side.

Supermicro also contends that the datasheet's disclosed airflow anticipates a back-to-back configuration. In support, it cites to its expert Wood's opinion that one of ordinary skill in the art would interpret the datasheet in this manner. Wood Decl., at pars. 13-14.

In reply, Rackable argues that this court should not consider the untimely declarations from Seelig and Mehra, who it claims Supermicro never disclosed as witnesses under Federal Rule of Civil Procedure 26 or in Supermicro's discovery responses. Rackable argues that Supermicro's failure to disclose Seelig and Mehra is extremely prejudicial.

Rackable also counters that the datasheet does not sufficiently anticipate the '366 patent claims. Contrary to Supermicro's characterization of Wood's testimony, Rackable argues that Wood admitted in his deposition that the devices discussed in the Raq 1 datasheet could have been mounted so that air flowed in a straight horizontal manner that passes through a Raq on one side of a rack and then through another Raq on the other side of a Raq. Ostapuk Decl., Exh. L at 258, 263. It therefore argues that the airflow anticipated by the '366 patent is not present in the datasheet. Rackable additionally argues that Wood's testimony is internally inconsistent.

**ii. Cobalt Raq Device**

Contrary to its arguments regarding the Cobalt Raq 1 datasheet, in its opposition, Supermicro does not specify which subsection of § 102 it is relying on with respect to its

argument that the device or Raq itself constitutes prior art. Instead, it simply states that the device is prior art under § 102. However, unlike the datasheet, Supermicro asserts that it is *not* arguing that the device anticipates the asserted claims. Instead, it states that it relies on the device only for obviousness arguments, which are not raised by Rackable in the instant motion.

In its opening papers, Rackable argues that the device does not constitute prior art. Like the datasheet, it asserts that Supermicro cannot produce any evidence of sales of the device prior to Rackable's invention or patent application. It notes that former Cobalt employee, Henriquez, was unable to identify sales or use dates for the device. Ostapuk Decl., Exh. M at 13, 15, 51-54.

In opposition, Supermicro counters that it can show that the device is prior art because it was sold as early as 1998, and lists ten pieces of evidence in support, including the Seelig and Mehra declarations, deposition testimony from inventor Henriquez that the Raq was completed in 1998, the print and copyright dates on the Cobalt Raq 1 datasheet, and an SEC filing that shows the first commercial sale as September 1998. *See* Corbett Decl., Exh. C at 11-12, Exh. E at 9; *see also* Ostapuk Decl. at Exh. Q.

In reply, Rackable makes the same objections to the Seelig and Mehra declarations as it did with respect to the datasheet, and argues that because Supermicro concedes that the device does not anticipate the '366 patent, Rackable should be granted summary adjudication on anticipation.

**C. Analysis**

At the outset, it is necessary to address the evidentiary issue raised by Rackable. As noted, Rackable argued in its reply that the court should not consider the Seelig and Mehra declarations proffered by Supermicro because Seelig and Mehra were not disclosed pursuant to Rule 26. However, because Rackable made this argument in its reply, Supermicro did not address the issue until the April 11, 2007 hearing. At the hearing, Supermicro noted that it had noticed depositions of Sun Microsystem ("Sun") (Cobalt's successor) employees several months ago in November 2006, which led to Henriquez's

deposition and also should have resulted in depositions of Seelig and Mehra. It noted that the delay in obtaining information from Seelig and Mehra resulted from Sun's reluctance to cooperate, and that it had "beat the bushes" to locate Seelig and Mehra. Supermicro offered at the hearing to reopen discovery such that Rackable could have an opportunity to depose Seelig and Mehra.

Because it appears that Rackable may have had notice of Supermicro's attempts to interview Sun/Cobalt employees several months ago, and alternatively, because any prejudice to Rackable may be remedied by allowing it to depose Seelig and Mehra, the court GRANTS the parties' stipulated request to reopen discovery for the limited purpose of allowing Rackable to depose Seelig and Mehra. Although the court has reviewed the Seelig and Mehra declarations in connection with Rackable's instant motion, for the reasons discussed below, it is not necessary for the court to rely on those contested declarations. The court would reach the same conclusions on the issues absent those declarations.

Again, the court breaks down its analysis of the prior art issues according to the required elements set forth by the prior art statutes and relevant Federal Circuit law.

**i. Cobalt Raq 1 Datasheet**

a. Public Accessibility

As noted, under both sections 102(a) and (b), in order for an invention to be "known" such that it may constitute prior art, it must be accessible to the public. *See Woodland Trust*, 148 F.3d at 1370. Rackable asserted in its opening papers that there was no evidence that the datasheet was publicly disseminated. Supermicro relies on the Mehra and Seelig declarations and on deposition testimony from Henriquez, as evidence that the datasheet was indeed accessible to the public.

The court need not rely on the contested Seelig and Mehra declarations in concluding that a genuine issue of material fact exists as to the public accessibility of the datasheet. Instead, the court relies on the deposition testimony from Raq's inventor, Henriquez, who attested that the datasheet was produced for customers or end-users, and

that in Cobalt's ordinary course of business, it would have been sent to the customers prior to shipping of the Raq device. *See* Corbett Decl, Exh. C at 20-24. This is sufficient to create a triable issue of fact as to the public accessibility of the datasheet.

b. Date of Accessibility/Dissemination

The public dissemination or accessibility of the prior art must also predate the applicant's invention, in this case that of the '366 patent. *See Mahurkar v. C.R. Bard Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996). The date of invention is presumed to be the filing date of the application for a patent, which in this case was December 17, 2002. 5 Chisum on Patents, sect. 5:03[2][a].

Again, the court need not rely on the Seelig and Mehra declarations in determining that a genuine issue of material fact exists regarding the date that the datasheet was made accessible to the public. Instead, the 1998 print and copyright dates on the datasheet itself, in combination with evidence cited by Supermicro that the Raq itself was made commercially available to the public in September 1998, and evidence from the Raq inventor that the datasheet was likely distributed prior to the shipping of the Raq to customers, constitute sufficient circumstantial evidence to create such an issue of fact. *See* Ostapuk Decl., Exh. Q; Corbett Decl, Exh. C at 20-22; *see also Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988) (exhaustive proof of when public received publication not required; evidence of routine business practice of public distribution of printed materials is sufficient to prove public accessibility). Given the fact that evidence exists, in addition to the 1998 printed date on the datasheet itself, this case, is therefore distinguishable from the district court case relied on by Rackable. *See Hillgraeve*, 271 F.Supp.2d at 974-75.

In sum, because there is a genuine issue of material fact that the Cobalt Raq 1 datasheet was publicly accessible prior to the December 17, 2002 filing date of Rackable's '366 patent application, there is a triable issue as to whether the datasheet constitutes prior art under sections 102(a) and (b).

c. Anticipation

Rackable notes that for purposes of this motion, it is disputing only the datasheet's anticipation of '366 claim limitations regarding (1) back-to-back configuration, and (2) airflow. *See* Reply at 11 n.6.[4] Accordingly, this court's inquiry is limited to whether or not a genuine issue of material fact exists as to whether the datasheet anticipated the "back-to-back" configuration and airflow limitations at issue in the surviving '366 patent claims.

The datasheet does not *explicitly* include language requiring a "back-to-back" configuration, or "a channel for air" between the back-to-back computers as specified in '366 patent independent claims 1, 23, and 30. *See* Ostapuk Decl., Exh. Q. However, extrinsic evidence from Supermicro's expert, Wood, supports Supermicro's invalidity counterclaim. Regarding the configuration of the Raq servers, Wood opines that the datasheet anticipates a back-to-back configuration based both upon the court's construction of the term "front," and on the understanding of one skilled in the art. He refutes Rackable's argument that the datasheet could anticipate the front-to-back placement of the servers. Wood explains that:

> One of skill in the art would read the Cobalt Raq datasheet and understand that it does not teach one to mount units facing the same direction, such that the air passes horizontally into one unit and out of the unit on the other side of the rack as argued by Rackable . . . [for] two reasons. . . . First, one of skill in the art would understand that it is bad thermal design to have the hot air from one unit blow into the other unit. . . . Second, as a matter of operations, one of skill in the art typically will mount servers so that the same side of all of the computers face outward on the rack.

Wood Decl., pars 12-13.

Additionally, Wood advises that the datasheet also anticipates the channel for airflow disclosed by the '366 patent claims. He asserts that the datasheet:

> discloses a fan that creates a front-to-back airflow through the computers when mounted in racks. It is inherent that this airflow would be sufficient to constitute a cooling flow. Given the back-to-back configuration disclosed by this datasheet, the air flowing through the rack mounted computers necessarily would enter through the outward-facing sides of the computers

---

[4] Apparently, there are other issues regarding anticipation that Rackable has not raised in the instant motion. *See* Reply at 11 n.6 (noting that it disputes that the datasheet discloses other claim limitations, including a "computer that functions as a server," and that Supermicro has addressed issues on which Rackable did not move).

into the space between the computers, and then out of that space (or vice-versa). Thus, the airflow will match the airflow claimed in the '366 Patent.

Wood Decl., par. 14.

Accordingly, the issue for this court is whether Supermicro's extrinsic evidence, specifically its expert declaration, is sufficient to create a triable issue of material fact as to the datasheet's anticipation of the back-to-back configuration and airflow disclosed by the patent.[5]

The law of anticipation does not require that the datasheet explicitly disclose the configuration or the channel for airflow. A publication that "does not expressly disclose in words" one or more elements of a patent's claims "might nevertheless be anticipating if a person of ordinary skill in the art would understand the [publication] as disclosing [the missing element or elements] and if such a person could have combined the [publication's] description of the invention with his own knowledge to make the claimed invention." *Helifix, Ltd. v. Blok-Lok, Ltd*, 208 F.3d 1339, 1347 (Fed. Cir. 2000). Whether a claim limitation is inherent in a prior art reference for purposes of anticipation is a question of fact. *See Finnigan Corp. v. International Trade Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999).

"Recourse to extrinsic evidence is proper to determine whether a feature, while not explicitly discussed, is necessarily present in a reference." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1328 (Fed. Cir. 2001). Such extrinsic evidence may be used to "educate the decisionmaker to what the reference meant to persons of ordinary skill in the field of the invention," but may not be used "to fill gaps in the reference." *Scripps Clinic & Research Foundation v. Genentech*, 927 F.2d 1565, 1576 (Fed. Cir. 1991).

The Federal Circuit has held that expert testimony that prior art in fact teaches the limitations of a method patent is sufficient to create a genuine issue of material fact as to anticipation. *See Medical Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1221 (Fed. Cir. 2003) (reversing district court's grant of summary judgment in favor

[5]Rackable implies that this court should afford little weight to Wood's declaration because it contends that his opinions are inconsistent with his deposition testimony on the issue. Having reviewed both the declaration and the deposition testimony, *see* Ostapuk Decl., Exh. L, the court does not agree that the two are inconsistent.

of plaintiff). That is exactly what Wood's testimony accomplishes in this case. Wood's testimony reveals to the court that one of ordinary skill in the field of computer storage systems would interpret the datasheet to anticipate the airflow and back-to-back configuration taught by the '366 patent claims. Given Wood's testimony, the court finds that a triable issue of material fact exists, and Rackable's motion must be DENIED as to the Cobalt Raq 1 datasheet.

**ii. Cobalt Raq Device**

The analysis regarding the Raq itself is similar to that with respect to the datasheet. For the same reasons discussed above regarding the datasheet, the court concludes that there is a genuine issue of material fact regarding the public use or sale and the date of public use or sale with respect to the Raq. Accordingly, subject to proof at trial, the Raq may constitute prior art under § 102.

However, given Supermicro's concession that it is not asserting anticipation as to the Raq, the court GRANTS Rackable's motion for summary adjudication as to the Raq's anticipation of the pertinent '366 patent claims.

**CONCLUSION**

For the above reasons, the court GRANTS IN PART AND DENIES IN PART Rackable's motion for summary adjudication and DENIES Supermicro's motion for summary judgment. Concerning infringement, the court DENIES Supermicro's motion for summary judgment of the inducement of infringement and direct infringement claims, and also DENIES Rackable's motion for summary adjudication as to one element of the inducement of infringement claim, regarding direct infringement by third party Intelenet. However, as stated on the record, the court DISMISSES any claim for contributory infringement raised by Rackable in its complaint.

Turning to enforceability, the court GRANTS Rackable's motion for summary adjudication that its alleged failure to disclose the copyright and/or printing dates for the Cobalt Raq 2, 3, and 4 datasheets and the existence of the Cobalt Raq 1 datasheet did not constitute inequitable conduct.

As for invalidity, the court DENIES Rackable's motion for summary adjudication that the Cobalt Raq 1 datasheet and the Raq device do not constitute prior art. The court also DENIES Rackable's motion because there is a triable issue of fact as to the Cobalt Raq 1 datasheet's anticipation of the '366 patent claims regarding back-to-back configuration and airflow. However, because the issue is undisputed, the court GRANTS Rackable's motion for summary adjudication that the Raq device does not anticipate.

Additionally, discovery is reopened for the limited purpose of allowing Rackable to depose Seelig and Mehra.

**IT IS SO ORDERED.**

Dated: April 25, 2007

PHYLLIS J. HAMILTON
United States District Judge